UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| KEVIN THOMAS, | ) |
|        Plaintiff, | ) |
| v. | ) No. 1:06-CV-401 PPS |
| SELECT PORTFOLIO SERVICING, INC., BANK OF NEW YORK, SANDRA M. REID, MOUNTAIN WEST REALTY CORPORATION, BANK OF AMERICA, COLDWELL BANKER ROTH WERLY, | ) |
|        Defendants. | ) |

**OPINION AND ORDER**

Kevin Thomas lost his home in foreclosure after he failed to make his mortgage payments. The bank that purchased his home gave him numerous opportunities to retrieve his personal belongings. But months went by and Thomas never claimed his stuff; so his things went to waste. Now that his personal property is gone, Thomas is trying to assign blame to a variety of people. So he has sued Sandra Reid (the mother of his child), Reid's lawyer, Thomas's mortgage lenders, and the banks and entities involved in the removal of his property. Several of the Defendants have moved for summary judgment (DE 94, DE 97) and, for the reasons that follow, those motions are granted. As for the remaining supplemental state law claims, those are dismissed without prejudice.

**I. BACKGROUND**

On September 22, 2000, EquiCredit Corporation (a subsidiary of Bank of America) issued Thomas a mortgage loan to refinance an existing loan at a rate of 14.25%. (DE 99-4.) According to Defendants, Thomas was given this high rate because of his extremely low credit score. (DE 99-5.) Thomas says it's because he's black. Sometime later, EquiCredit assigned its interest in

the promissory note to Bank of New York ("BONY").  (DE 94-6 at 2.)  In December 2002, Thomas defaulted on his mortgage payments.  (*Id.*)  This prompted BONY to accelerate the remaining debt pursuant to the terms of the mortgage agreement.  (*Id.*)  When Thomas failed to pay up, BONY filed a complaint in Allen County Indiana Superior Court.  (DE 94-6.)  Thomas never responded to the Complaint; so, on January 27, 2006, the court granted BONY a default judgment and a decree of foreclosure.  (DE 94-7; DE 94-8.)  The decree ordered that Thomas's home be auctioned at a sheriff's sale and that Thomas vacate the property upon such sale.  (DE 94-8.)

BONY purchased the property at the sheriff's sale on April 13, 2006.  BONY's servicing agent, Select Portfolio Servicing, Inc. ("SPS"), retained the services of Duane Wilder, a Coldwell Banker realty broker, to assist in taking possession of the real estate.  (DE 94-2 ¶ 2.)  Wilder made Thomas an offer under SPS's Cash-for-Keys program, which would have allowed Thomas to receive money for voluntarily vacating his property and removing his personal belongings.  (*Id.* ¶¶ 3-5.)  Thomas never responded to the offer.  (*Id.*)

On April 28, 2006, BONY obtained a Writ of Assistance from the Allen County Superior Court directing the Allen County Sheriff to evict Thomas from the residence.  (DE 94-11.)  The Sheriff's Department gave Thomas a week's notice and then changed the locks on the property on May 16, 2006.  (DE 94-4 ¶¶ 3-4.)  Thomas still hadn't shown up to claim his property.  (*Id.*)  Therefore, the Sheriff's Department placed a note on the front door giving him two weeks to retrieve his possessions.  (*Id.* ¶ 5.)  A few days later, Wilder gave Thomas a key to enter the property, along with a notice that any property remaining on the premises after June 1, 2006, would be placed in storage for 30 days, and after that would be removed and disposed of.  (DE 94-2 ¶ 8; DE 94-3 at 2.)  By June 6, 2006, Thomas had removed only a few of the items.  (DE 94-2 ¶

9.)  SPS then moved the property to storage, and sometime later the property was discarded.  (*Id.* ¶¶ 11-14.)  The house resold on August 25, 2006.  (*Id.* ¶ 16.)  Up to that point, Thomas had never contacted Wilder to retrieve his property.  (*Id.* ¶ 15.)

Thomas filed this lawsuit in December 2006.  He subsequently filed two amended complaints, each of which is difficult to follow. (DE 13; DE 65.)  Over the course of his three pleadings, Thomas has added, removed and re-added claims and defendants, creating a great deal of confusion for the parties and the Court.  (*Id.*)  The current operative complaint – Thomas's Second Amended Complaint [DE 65] – alleges that Defendants conspired to violate his civil rights under the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601, *et seq*.  (DE 65.)  Thomas is also suing for intentional infliction of emotional distress.  (*Id.*)

During the revolving door of claims and defendants in this case, Thomas appears to have abandoned several other claims.  First, in his First Amended complaint, Thomas makes allusions to violations of his Fourth and Fifth Amendment rights, and requests the Court to set aside the state court default judgment and award him compensatory damages for his lost property.  (DE 13.)  Thomas makes no mention of these claims in his Second Amended Complaint and therefore they are deemed abandoned.  *See Flannery v. Indus. Ass'n of America*, 354 F.3d 632, 638 n.1 (7th Cir. 2004) ("It is axiomatic that an amended complaint supercedes an original complaint and renders the original complaint void.").  Second, Thomas named EquiCredit as a Defendant in his original complaint, but didn't assert any claims against EquiCredit in his First Amended Complaint.  (DE 1; DE 13.)  Therefore, EquiCredit was dismissed from this action.  (DE 15.)  Thomas attempted to re-add EquiCredit in his most recent complaint, but failed to serve EquiCredit within 120 days; therefore any claims against EquiCredit must be dismissed.  Fed. R. Civ. P. 4(m).  Third, Thomas names Mountain West Realty Company as a defendant.  But Mountain West never entered an

3

appearance in this case, which means it was not receiving service of documents through the electronic filing system at the time the Second Amended Complaint was filed. Since Thomas failed to effect service of the Second Amended Complaint on Mountain West, as it was required to, any claims against Mountain West are also dismissed. Fed. R. Civ. P. 5(a)(1)(B).

Several of the remaining Defendants in this case – Coldwell Banker, Bank of America, SPS and BONY – have moved for summary judgment. (DE 94; DE 97.) Thomas also moved for summary judgment. (DE 86; DE102).

**II. DISCUSSION**

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine dispute about a material facts exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 248 (1986). In making this determination, the Court must construe all facts and draw all reasonable inferences from the record in the light most favorable to the non-moving party. *Id.* at 255. But the nonmoving party is not entitled to the benefit of "inferences that are supported by only speculation or conjecture." *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008) (citations omitted).

Thomas claims Defendants violated his rights under the FHA by offering him a higher interest rate because he is black. There are numerous problems with this claim, not the least of which is the fact that it is untimely. The FHA bars any individual who has been allegedly injured by a discriminatory act from filing a civil complaint "later than 2 years after the occurrence or termination of the allegedly discriminatory housing practice." 42 U.S.C. § 3613(a)(1). Thomas

4

entered the high-interest mortgage agreement on September 22, 2000 – more than six years before he filed this case. Therefore, his FHA claim has expired.

Thomas counters that his claim amounts to a continuing violation. The argument is baseless because Thomas only alleges a single act of racial discrimination – the unfavorable mortgage rate. There is no indication that the Defendants were involved in a continuous series of discriminatory actions giving rise to a cumulative injury. *See Heard v. Sheahan*, 253 F.3d 316, 319 (7th Cir. 2001). Nor is there any proof of an ongoing discriminatory practice. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380-81 (1982).

Even if Thomas's claim wasn't time-barred, he offers simply no evidence of discriminatory lending. In fact, the record shows that none of the Defendants were involved in the high interest loan at issue. (DE 99-4; DE 99-5.) If Thomas has a claim arising from this loan, that claim is against EquiCredit. Since EquiCredit is no longer a party to this case, Thomas's FHA claims must be dismissed.

Thomas further alleges Defendants acted "in concert . . . to deny various civil rights of the Plaintiff." (DE 65 ¶ 3.) To the extent Thomas is alleging a civil conspiracy under 42 U.S.C. § 1985(3), that claim is a non-starter. Such a claim requires proof of: (1) the existence of a conspiracy; (2) a purpose of depriving a person or class of persons of equal protection of the laws; (3) an act in furtherance of conspiracy; and (4) an injury to person or property or constitutional deprivation. *Green v. Benden*, 281 F.3d 661, 665 (7th Cir. 2002). The record is completely devoid of evidence on any of these elements. Thomas's conclusory assertions that the Defendants banded together against him because he is black is not enough to create a genuine issue of fact.

The bulk of Thomas's Second Amended Complaint is a rant against Sandra Reid, the mother of his daughter, relating to child support and custody issues that have nothing to do with

the FHA claims. (DE 65.) At the end of his harangue, Thomas states that "the defendant's . . . outrageous and intolerable . . . conduct . . . is the proximate cause of emotional distress." (DE 65 at 7.) This appears to be an intentional infliction of emotional distress claim specifically directed at Reid. But to the extent Thomas claims the other Defendants intentionally caused him emotional distress, Thomas offers zero evidence that any of the other Defendants engaged in any extreme and outrageous conduct with the intent to cause him severe emotional distress. *Mills v. Kimbley*, 909 N.E.2d 1068, 1079 (Ind. Ct. App. 2009). The record only shows that the Defendants acted lawfully, followed court orders, exercised caution, and gave Thomas more than sufficient chances to prevent the destruction of his property.

The only Defendant remaining in this case is Reid. Thomas claims Reid was part of the alleged civil conspiracy against him, but since he hasn't come close to proving the existence of a conspiracy, all that's really left in this case is Thomas's state law emotional distress claims against Reid. Thomas states that – like himself – Reid is a citizen of the State of Indiana. (DE 65 ¶ 14.) Therefore, there is no diversity jurisdiction over this matter. 29 U.S.C. § 1332. Federal law gives me discretion to decline jurisdiction over supplemental state law claims when the claims with original federal jurisdiction have been dismissed. 28 U.S.C. § 1367(c)(3). In this case, the state law claims against Reid are so far removed from his federal claims that it makes little sense for me to retain jurisdiction over this matter. Moreover, Reid has yet to file an answer to the Second Amended Complaint. Therefore, these claims are far from being resolved, and Thomas will not be prejudiced by re-filing them in state court.

### III. CONCLUSION

For the foregoing reasons, Defendants' Motions for Summary Judgment [DE 94, DE 97] are **GRANTED**. Thomas's Motion for Summary Judgment [DE 86] is **DENIED**. All other

pending motions in this case are **DENIED AS MOOT**. Thomas's infliction of emotional distress claims against Defendant Sara Reid are **DISMISSED WITHOUT PREJUDICE**. All other claims are **DISMISSED WITH PREJUDICE**. The Court further **VACATES** all pending deadlines and settings in this matter and **DIRECTS** the Clerk to treat this case as **TERMINATED**.

**SO ORDERED**.

ENTERED: September 4, 2009

 s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT